# FREEMAN SMITH v. JIM HENRY BURKS et al.
## —305 S. W. (2d) 748.

Middle Section. July 26, 1957.

Petition for Certiorari denied by Supreme Court October 4, 1957.

Richard Marshall, Nashville, for plaintiff in error.

George H. Armistead, Jr., Nashville, for defendant in error.

I

SHRIVER, J. The plaintiff, Freeman Smith, sued the defendants to recover damages for personal injuries received in an accident which occurred on or about September 30, 1953.

The case was tried before Judge E. F. Langford, and a jury, and, at the conclusion of the plaintiff's proof, the defendants' motion for peremptory instructions was sustained.

The case is properly before this Court on an appeal in the nature of a writ of error and the only question involved is whether or not the Court erred in granting the defendants' motion for peremptory instructions.

The declaration is in two counts. In the first count the plaintiff alleges that he had ordered some mixed concrete from the defendant, Limestone Ready Mix Company, and it was being delivered to the plaintiff in a truck driven by one of its employees, Jim Henry Burks. Just after it left the road or highway the truck turned into a field to make delivery of the concrete. There being no road into the field, it became mired in the soft ground. The plaintiff, on seeing this condition, went to the truck and he and another colored man got some rocks and placed them where the dirt was soft and the plaintiff *voluntarily* got up on the left running board of the truck to assist and direct Burks in driving up into the field. After it had gone a few feet the motor stopped and the truck rolled back to the edge of the paved road when the front of it reared up, and plaintiff fell off and broke his leg. It is charged that the defendant negligently permitted the motor of the truck to stop and negligently permitted it to roll back, which was the cause of the accident.

In the second count the plaintiff relies upon the doctrine of the last clear chance and the humanitarian doctrine, and alleges that it was the duty of Burks, the driver, to warn the plaintiff of the existing peril and that he

failed to do so and failed to keep the truck under control, and that such failure constituted willful negligence which was the proximate cause of the accident.

Each defendant filed a plea of the general issue.

## II

Plaintiff's testimony and pictures introduced as exhibits show that the accident occurred just off the edge of the paved or concrete road where the truck turned to enter the field.

After plaintiff and Percy Thompson, who was working for him on the day of the accident, had put some rocks in the soft dirt so as to help the truck gain better traction, plaintiff decided to get up on the left running board of the truck. He said he did so to direct the driver where to go. He took hold of the cab with both hands and, as he stated, the truck was just easing up getting over into the field across a little dirt embankment, when, after it had gone a few feet, the engine, for some reason, stopped with the back end just a few feet off the paved road. When the engine stopped plaintiff stated that the truck then "eased back a little bit" but he continued to ride as it went back. He stated that then, all of a sudden, the front end reared up and threw him off, resulting in his injuries.

He further stated that the driver had not said anything to him about getting on the truck; that he had seen similar trucks and had seen this truck before, and that he knew the driver, Henry Burks, who lived just about a block from where plaintiff lived; it was broad open daylight and he could see the whole situation.

Percy Thompson testified that he was working for the plaintiff on the day of the accident assisting him in building some houses. He said that while he was working on some concrete footing he saw Burks turn off the roadway and enter the field, and saw that he could not make it. He, thereupon went down there and saw that the truck was leaning to one side and he got some rocks to fill in the ruts so as to build up that side and to help the truck to get into the field. As Burks backed up on the road and started up into the field, he (Thompson) got on the running board on the right side, while the plaintiff got on the left running board. He stated that when the truck got just about on top of the little rise at the edge of the field, the motor went dead and the truck began to ease back. He did not know why the motor stalled. He heard the air brakes being applied and Burks, the driver, let the truck roll back a little and then, as he stated, ''All of a sudden the truck reared up'', and he stepped off. The truck rolled back only a few feet and the back of it was right at the edge of the back-top road when the front end reared up.

Thus, it is seen that plaintiff and his witness both testified that they did not know why the motor of the truck stopped, but when it did, it ''Began to ease and roll back a little'', and then the front ''suddenly reared up'' and this caused the accident.

## III

The first and most important question to determine is whether plaintiff was an invitee or a mere volunteer, or licensee.

If plaintiff was an invitee, the questions under the pleadings and proof, as to the alleged negligence of the

driver, as the proximate cause of the injury, as well as that of contributory negligence on the part of the plaintiff, are proper questions for the jury.

On the other hand, if plaintiff was a mere licensee, the defendant owed him no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness.

■ The rule is well stated in Lange v. St. Johns Lumber Co., 115 Or. 337, 237 P. 696, as follows:

"One on premises by invitation, express of implied, is an 'invitee,' whereas one who is there merely by permission or toleration is a mere 'licensee,' and, as to the former owner of premises must use reasonable care, whereas to latter he owes no greater duty than to avoid willful or wanton injury."

The distinction as among invitees, licensees, and trespassers is stated in Haley v. Deer, 135 Neb. 459, 282 N. W. 389, 392, as follows:

"Those who come upon the premises of another are in one of three classes: Invitees are those who are expressly or impliedly invited, as a customer to a store; licensees are persons whose presence is not invited, but tolerated; trespassers are persons who are neither suffered nor invited to enter."

In Westborne Coal Co. v. Willoughby, 133 Tenn. 257, 180 S. W. 322, it was held that a servant who is temporarily laid off, and goes upon his master's premises to assist another servant in getting his tools, is not "employed", but is a mere licensee, so that his administrator can not recover for his death except upon a showing of willful of malicious injury.

At p. 266 of 133 Tenn., at p. 325 of 180 S. W., in quoting from Louisville, N. A. & Chicago R. Co. v. Bryan, 107 Ind. 51, 7 N. E. 807, the Court said:

"To constitute a willful injury, * * the act which produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of. It involves conduct which is quasi criminal. * * *"

The defendant driver did not ask or suggest to the plaintiff that he ride on his truck. Plaintiff's testimony makes this abundantly clear. Thus, if, as is insisted by counsel for the plaintiff, he was an invitee, it must have been by implication.

An implied invitation is defined by Shearman and Redfield on Negligence (6th Ed.) sec. 706 and is quoted in Chattanooga Warehouse & Cold Storage Co. v. Anderson, 141 Tenn. 288, at p. 294, 210 S. W. 153, at p. 154, as follows:

"Invitation by the owner or occupant is implied by law, where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise."

But the Court points out that the foregoing rule is definitely qualified and the qualification is set forth in the opinion and is quoted by the Court of Appeals in Hatcher v. Cantrell, 16 Tenn. App. 544, 549, 65 S. W. (2d) 247, 249.

The qualification of the rule as stated by the Courts in both the above cases is as follows:

"The great weight of authority, however, qualifies this definition of implied invitation by providing that where one goes upon the premises of another, for any of the purposes stated above, he must confine himself to such parts of the premises as are included in the invitation. Such implied invitation does not involve in its scope such parts of the establishment to which the public is not invited. It is only those parts of the premises where the person invited is expected to be that the owner is required to keep in a reasonably safe condition.

"As stated by one writer, operators of factories and mills do not impliedly invite customers into parts of their plants where the machinery is being operated, hotel keepers do not invite guests to their engine rooms, and carriers do not invite passengers to the many places not fitted up for their use. The foregoing conclusion is supported by the following authorities:" (Here follows a long list of authorities from numerous jurisdictions)

Again in Chattanooga Warehouse & Cold Storage Co. v. Anderson, supra, 141 Tenn. at p. 296, 210 S. W. at p. 155, it is said:

"The theory of negligence was well stated by this court in Williams v. City of Nashville, 106 Tenn. [533] 538, 63 S. W. [231] 233, the court saying:

" 'For the theory of all negligence cases is that the defendant has violated some legal duty he owed plaintiff. So where such duty does not exist, how-

ever unfortunate the injury may be, and free from negligence, yet he must alone bear the consequences; he cannot impose them upon one under no obligation in law towards him, save not to inflict, directly or indirectly, wanton injury upon him.' ''

In Texas Co. v. Haggard, 23 Tenn. App. 475, 134 S. W. (2d) 880, it was held that a person is a licensee where his entry or use of premises is permitted by the owner or person in control thereof, or by operation of law, so that he is not a trespasser but is without any express or implied invitation from the owner or occupant.

In Nashville, C. & St. L. Ry. v. Lovejoy, 138 Tenn. 492, 198 S. W. 61, 65, the plaintiff, Lovejoy, was struck by defendant's train while he was on the tracks near some scales belonging to the Railroad Company, where he had the duty of weighing cars of coal for his employer, Clifty Consolidated Coal Co., and which weights were also accepted and used by the Railroad Company. To this extent it appears that defendant was engaged in a task that was of mutual interest and benefit to him and the defendant Railroad Company.

In going to and from the scales he walked along the tracks of defendant. But it was shown that there was a path beside the tracks which he used from time to time, and there was no necessity for his walking on the tracks between the rails, as he was doing at the time his foot was caught in a switch from which he was unable to extricate himself in time to avoid being struck by the caboose of the train. The Court held that he was a mere licensee on the tracks and that,

"An owner of premises owes no duty to a bare licensee to keep them in safe condition. * * *

"It is true, as contended by learned counsel for plaintiff, that he was upon the scales by invitation of defendant, but in leaving the scales and in going to the office or depot, plaintiff had no right to go upon another portion of the premises, the railroad track, to use it for purposes for which it was not designed or intended. 29 Cyc., 452. * * *

"We are of opinion there was no invitation to plaintiff by the railway company to use the center of the track as a walkway."

In the instant case, while plaintiff states that he got on to the running board of the truck for the purpose of directing the driver where to drive, common experience and common sense would indicate that he could have been of more assistance to the driver by staying on the ground rather than riding on the running board. This is true because the point of difficulty was only a few feet from the edge of the paved road and was a small rise just at the entrance to the lot where the truck was seeking to go. Thus, if the plaintiff had remained on the ground where he belonged, he could have pointed the way to the driver, whereas, on the running board he undoubtedly constituted something of an obstruction to the driver's view and was, doubtless, more of a hindrance than a help.

We know that the truck was moving at a slow rate of speed and, from the record, the destination was only a short distance into the lot or field where the concrete was to be delivered.

In any event, it is a matter of which we may take judicial notice, that the running board of a truck is not a suitable place for a passenger to ride. Such a position on

a moving vehicle, even on smooth ground, is fraught with some hazard which must have been known to the plaintiff.

On the other hand, no reason is assigned as to why the motor on the truck stopped, and the mere fact that it did stop and the truck rolled a few feet backwards, would not constitute actionable negligence on the part of the driver in the absence of some showing other than is made here.

More than this, the fact that the front end of the truck reared up when it rolled back to the edge of the road, is not explained and no evidence is in the record that the driver of the truck had ever experienced such action on the part of the truck, or any other truck, previous to that. The rearing up of the front end of the truck which caused the plaintiff to fall off was an unexpected, as well as an unexplained event. See Westborne Coal Co. v. Willoughby, 133 Tenn. 257, at pp. 262-263, 180 S. W. 322, at p. 324.

 Having in mind the qualification of the rule hereinabove quoted with respect to implied invitation, that is, that, when one goes on the premises of another for any of the purposes stated in the rule, he must confine himself to such parts of the premises as are included in the invitation, and that such implied invitation does not involve in its scope such parts of the defendant's premises to which the public is not invited, but only involves those parts of the premises where the person invited is expected to be, and that, otherwise, the owner is not liable except for gross negligence of willful injury, we are persuaded to believe that the facts and circumstances shown herein do not warrant the conclusion that there was an implied invitation to plaintiff to ride the running board of the truck.

We thus conclude that the plaintiff was not an invitee but was, at most, a volunteer or licensee under the circumstances shown by this record.

## IV

Counsel for plaintiff also take the position that, under the doctrine of the "Last clear chance", there is liability on the part of the defendant.

We cannot accept this theory in view of the facts shown by the record.

It appears that the rearing up of the front of the truck which caused the plaintiff's fall was a totally unexpected event and there is nothing in the record to show, or from which the inference might be drawn, that the driver of the truck anticipated such an occurrence and that he did so in time to warn the plaintiff and thus avoid the accident.

In order for the doctrine of last clear chance to apply, the evidence must show that the peril of the plaintiff was discovered by the defendant and after its discovery the defendant failed to exercise reasonable care to prevent the injury. See Tennessee Electric Power Co. v. Day, 10 Tenn. App. 334; Cash v. Casey-Hedges Co., 139 Tenn. 179, 201, S. W. 347.

## V

Since plaintiff was a mere licensee on defendant's truck, and since there is no showing of gross negligence or willful injury of plaintiff by defendants, we think the trial judge correctly sustained the motion for peremptory instructions.

Affirmed with costs.

Felts and Hickerson, JJ., concur.